# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LINDA LI, M.D.,

    Plaintiff,

v.

ILLINOIS DEPARTMENT OF FINANCIAL
AND PROFESSIONAL REGULATION, et al.,

    Defendants.

No. 17 CV 2498

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda Li is a doctor whose license was suspended by the Illinois Department of Financial and Professional Regulation. Li alleges that IDFPR suspended her license based on a report without foundation from the Rockford police about her mental instability and the results of a faulty psychiatric evaluation performed by a doctor at Northwestern Memorial Hospital. In the amended complaint, Li brings claims against defendants—IDFPR and two of its officials, the City of Rockford and one of its police officers, the hospital and one of its doctors, and Northwestern University's Feinberg School of Medicine and Department of Psychiatry and Behavioral Science—alleging theories of constitutional violations under 42 U.S.C. § 1983 and intentional infliction of emotional distress. All defendants other than the university move to dismiss the complaint. For the following reasons, I grant defendants' motions to dismiss.

## I. Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) argues that the complaint has not met that requirement and "fail[s] to state a claim upon which relief can be granted." That is to say, even if all the facts alleged in the complaint were true, it would not be enough to establish a plausibly viable cause of action. Because Li is pro se, I construe her complaint liberally and hold it to a less stringent standard than a complaint drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, to survive a motion to dismiss, a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I assume that all of the facts alleged in the complaint are true and draw reasonable inferences from those facts in Li's favor, but I am not required to accept as true the complaint's legal conclusions. *Id.* at 678–79. In considering a motion to dismiss, I am limited to reviewing the complaint, "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (citation omitted). I may take judicial notice of court filings "when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

## II.  Facts

Li is a board-certified physician who owns two pain management practices in Illinois. [7] ¶ 15.[1] She is Chinese-American. [7] ¶ 61; [40] at 2. In January 2014, Li reported that she was the victim of theft and property damage, and Rockford Police Officer Elizabeth Hughes was assigned to investigate Li's reports. [7] ¶ 16. Hughes did not accept the evidence Li tried to offer and instead determined that Li's reports were unfounded and lacked evidence, referring to Li as delusional. [7] ¶ 19. Hughes then reported Li to IDFPR. [7] ¶ 17.

IDFPR is a state administrative agency that is responsible for a variety of professional licenses. [7] ¶ 6. During the relevant time period, IDFPR's employees included Laura Forester, the Chief Medical Prosecutor, and Vladimir Lozovskiy, a Staff Medical Prosecutor. [7] ¶ 8–9. Once Forester received the complaint from Hughes, she ordered Li to undergo a psychological evaluation with Dr. Ashraf Helmy, a staff forensic psychiatrist at Northwestern Memorial Hospital. [7] ¶¶ 12, 20, 23. Helmy was also associated with Northwestern University's Feinberg School of Medicine and Department of Psychiatry. [7] ¶ 12. In March 2014, Helmy conducted a psychiatric evaluation of Li for about two-and-a-half hours. [7] ¶ 23. Despite telling Li and her father that Li's cognitive functioning was "fine," Helmy made a finding that Li suffered from a delusional disorder. [7] ¶¶ 25–26. In making his finding, Helmy did not review any evidence from Li or solicit statements from any of Li's family members or co-workers. [7] ¶¶ 23, 25.

---

[1] Bracketed numbers refer to docket numbers on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings.

On April 1, 2014, IDFPR suspended Li's medical license based on the reports of Hughes and Helmy. [7] ¶ 29. IDFPR published the suspension on its website. [7] ¶ 31. Li was not afforded a hearing prior to the suspension of her license. [7] ¶ 30. Li was also evaluated by other mental health professionals, who did not find that Li had a delusional disorder. [7] ¶¶ 27–28, 32, 38. In around December 2015, Li had a hearing regarding her license, but the hearing concluded in IDFPR's refusal to reinstate Li's license absent severe restrictions, which Li ultimately declined. [7] ¶¶ 34–36. In April 2016, IDFPR required Li to undergo a second psychiatric evaluation that was finally conducted in January 2017. [7] ¶¶ 40, 44. At the second evaluation, the psychiatrist found that Li does not suffer from a delusional disorder and recommended that Li's license be reinstated. [7] ¶ 44.

On March 15, 2016, Li filed a complaint in the Circuit Court of Cook County, alleging a claim of "psychiatric medical malpractice" against Helmy, Northwestern Memorial Hospital, and Northwestern University Medical Center. [37-1] at 17.[2] After a few iterations of dismissals and amendments, the third amended complaint brought claims of professional negligence, psychiatric abuse based on the equal protection act, fraud and misrepresentation, and libel and slander against Helmy and claims of failure to ensure public safety against the university and the hospital. [37-1] at 154–166. The state court dismissed Li's third amended complaint with respect to Helmy, the hospital, and the university with prejudice in February 2017.

---

[2] The state court filings, [37-1] at 17–177, bear stamps from the Circuit Court of Cook County, appear to be accurate, and Li has not contested their accuracy. I take judicial notice of them. *See Parungao*, 858 F.3d at 457.

4

[37-1] at 175. The dismissal was based on several grounds that largely fall into the bucket of "failure to state a claim," including that Helmy's statements were entitled to absolute privilege, Helmy did not have a physician-patient relationship with Li,[3] and the other claims were not cognizable under Illinois law. [31-7] at 172–75.

## III. Analysis

Defendants rely primarily on the affirmative defenses of sovereign immunity, the statutes of limitations, and res judicata. Complaints do not have to anticipate affirmative defenses, and ordinarily, complaints should not be dismissed at this stage. *Parungao*, 858 F.3d at 457. "But when it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate." *Id.* (citation omitted).

### A. IDFPR and its Officials

Li's claims against IDFPR and its officials, Forester and Lozovskiy, stem from their suspension of her medical license without providing her an opportunity to respond, in violation of her rights to due process and equal protection. These claims take the form of § 1983 actions and an action for the intentional infliction of emotional distress. Li also alleges that IDFPR interfered with her right to timely access to court.

---

[3] The state court also based its dismissal of the medical malpractice claim against Helmy on Li's failure to attach a physician's certification, which is required for medical malpractice claims under Illinois law. [31-7] at 173–74. But the court went on to the merits of the claim, finding that dismissal with prejudice was justified because Li could prove no set of facts that would entitle her to relief due to the lack of a physician-patient relationship.

5

The IDFPR defendants argue that all these claims are barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Amendment is interpreted to generally "bar[ ] actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). But there are exceptions to this immunity. A state is not protected by Eleventh Amendment immunity if it has consented to being sued in federal court or if Congress has abrogated the state's immunity. *Id.* And sovereign immunity does not bar a plaintiff from suing state officials if the plaintiff is requesting prospective equitable relief for ongoing violations of law. *Id.* (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

The Eleventh Amendment bars Li's claims against the IDFPR defendants because IDFPR is a state agency and Forester and Lozovskiy are officials being sued in their official capacities.[4] Nor do any of the exceptions to immunity apply. Illinois has not consented to suit in federal court for § 1983 claims or for the

---

[4] Li expressly prays for relief "against Defendants in their official capacities." [7] at 9. This choice—to sue Forester and Lozovskiy in their official, as opposed to individual, capacities—is unambiguous. Li's allegations in Count I of the amended complaint are directed almost entirely against IDFPR, referring to Forester and Lozovskiy as agents through which IDFPR acted. *See* [7] ¶¶ 52–53. Li is pro se and entitled to a liberal construction of her complaint, and individual capacity can be inferred from allegations of tortious conduct by an individual acting under color of state law. *See Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). But as liberally as I may construe Li's complaint, I do not construe it to contradict Li's express allegations.

6

intentional infliction of emotional distress. *See* 745 ILCS 5/1; 705 ILCS 505/8. Congress did not abrogate the states' immunity in § 1983. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012). The *Ex parte Young* doctrine does not apply because Li is requesting monetary damages, not an injunction, and she has not alleged an ongoing violation. Additionally, IDFPR and its personnel in their official capacities do not qualify as "persons" suable under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Li counters that the Eleventh Amendment does not protect state officials who willfully and negligently violate the law from suits seeking damages, primarily relying on *Scheuer v. Rhodes*, 416 U.S. 232 (1974).[5] Li is correct that *Scheuer* states that plaintiffs may, in some circumstances, seek damages from state officials who violate their constitutional rights. 416 U.S. at 238. But, as Li acknowledges, [44] at 26, that remedy is only available when the state officials are being sued in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) (interpreting *Scheuer* and stating that "the Eleventh Amendment does not erect a barrier against suits to impose '*individual and personal liability*' on state officials under § 1983" (emphasis added)). As noted above, Li is suing Forester and Lozovskiy in their

---

[5] In response to defendants' motions to dismiss, Li filed motions to strike the motions to dismiss. [40], [44]. To the extent they really are motions to strike, Li's motions are denied. But they appear to be Li's response briefs, and I am considering them as such. I attempt to address the substantive arguments Li makes in her response briefs, but some of Li's arguments are not addressed in this opinion. Many of those arguments are factual. The purpose of a Rule 12(b)(6) motion to dismiss is to test the *legal* sufficiency of the complaint, not to determine whether the facts are sufficient to prove the claims. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001).

7

official capacities, not their individual capacities. Her claim against them in her operative complaint is barred by the Eleventh Amendment.

### B. City of Rockford and Officer Hughes

Li brings claims against Rockford and Hughes for their role in her medical license suspension. More specifically, she argues that Hughes's refusal to accept evidence from Li when she reported the thefts and submission of a report to the IDFPR instead violated Li's rights to due process. This also, Li argues, violated her equal protection rights, because Hughes discriminated against her on the basis of her Asian race and Chinese national origin. This is also the basis of Li's intentional infliction of emotional distress claim. In addition, Li argues that Rockford (specifically, its police department)[6] failed to adequately train and supervise its officers and was deliberately indifferent in doing so.

The Rockford defendants argue that all claims against them are time-barred. Li states that there is no statute of limitations in § 1983. It is correct that § 1983 does not contain a statute of limitations in its text, but courts must apply the forum state's personal-injury statute of limitations to § 1983 claims, which in Illinois is two years. *Campbell v. Forest Pres. Dist. of Cook Cty., Ill.*, 752 F.3d 665, 667 (7th Cir. 2014). This is not to say that Li's claims are personal injury claims—as Li points out, they are not—but it is just the way the law fills in the statutory gap. Li also argues that the appropriate statute of limitations is four years, pursuant to 28

---

[6] The Rockford defendants argue that the Rockford Police Department is not a suable entity, which is correct. *See Averhart v. City of Chicago*, 114 Fed. App'x 246, 247 (7th Cir. 2004). Anyway, Li seems to concede this, noting that she filed suit against the City of Rockford. [40] at 10.

8

U.S.C. § 1658. Li is right that § 1658 creates a four-year statute of limitations for federal claims, but § 1658, enacted in 1990, only applies to actions arising under statutes enacted after it. *Id*. Section 1983 and, with it, the federal causes of action Li seeks to bring were enacted before 1990, so § 1658 does not apply. *Id*. Under Illinois law, the statute of limitations for the intentional infliction of emotional distress is generally two years, 735 ILCS 5/13-202, but it is shortened to one year for suits against local governments (like Rockford) and their employees. *See* 745 ILCS 10/8-101(a).[7]

A cause of action accrues (in other words, the clock starts running) "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (citation omitted). It is "when a plaintiff knows the fact and the cause of an injury . . . even though the full extent of the injury is not then known or predictable." *Id*. (citations omitted). Li's medical license was suspended on April 1, 2014. [7] ¶¶ 29, 31. On at least that date, she knew of her injury—the suspension of her medical license—and the causes of that injury. She had already had her frustrating experience with the Rockford police, found out that Hughes reported it to IDFPR, and submitted to the required forensic psychiatric evaluation at Northwestern. *See Kelly v. City of Chicago*, 4 F.3d 509, 512 (7th Cir. 1993)

---

[7] Li argues that her claim for intentional infliction of emotional distress is a federal cause of action, not a state one. But IIED is a state claim. The cases she refers to in support of her argument seem to refer to the availability of emotional distress damages for federal causes of action. As the Rockford defendants point out, if Li is attempting to allege emotional distress as part of her § 1983 claims, the statute of limitations for § 1983 claims would apply.

9

(finding the date of accrual for a bar alleging due process violations in the revocation of its liquor license was the date the license was revoked). All alleged facts concerning the Rockford and Northwestern defendants occurred before the license suspension.[8] Therefore, the clock began to run on April 1, 2014, and Li was required to bring her claims within two years—before April 1, 2016—in order for them to be timely. Li filed her initial complaint in this matter on March 31, 2017. [1]. Her complaint is too late.

The Rockford defendants also argue that Li insufficiently pleads the elements of an equal protection claim. Because I find that the claims against the Rockford defendants are time barred, I need not reach this argument.

### C. Northwestern Memorial Hospital and Dr. Helmy

Li's claims against the hospital and Helmy arise from Helmy's psychiatric evaluation of her, which Li alleges was not properly conducted and ultimately led to the suspension of her medical license. Li alleges that Helmy intentionally used the incorrect psychiatric diagnosis to injure her reputation, in violation of her right to free speech. Li also claims that Helmy and the hospital violated her right to due process and intentionally inflicted emotional distress. Additionally, Li alleges that the hospital was deliberately indifferent in its failure to adequately train and supervise its physician staff. In addition to the statute of limitations issues raised by the Rockford defendants, the hospital defendants argue that Li's claims against

---

[8] All post-suspension allegations, which mostly concern the appeals process, are based on alleged conduct by the IDFPR defendants, who are protected from Li's official-capacity claims by the Eleventh Amendment.

them are barred by the doctrine of res judicata. They allege that Li already litigated her causes of action against them in state court, and those claims were dismissed.

Res judicata bars parties from attempting to relitigate a claim when it has already been decided and a final judgment has been issued on the merits. *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). Federal courts are required to give state court judgments the same preclusive effect they would have in state court. *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). Because the hospital defendants seek to enforce an Illinois judgment, I must apply Illinois law to determine whether res judicata bars Li's claims. *See Rooding v. Peters*, 92 F.3d 578, 580 (7th Cir. 1996). In Illinois, res judicata applies if there is "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of the parties or their privies." *Parungao*, 858 F.3d at 457 (citation omitted). If res judicata applies, "the plaintiff is barred from raising 'not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit.'" *Id.* (citation omitted).

Li's claims against the hospital defendants are precluded because the elements of res judicata are met. First, the state court dismissed Li's complaint with prejudice for the failure to state a claim, which constitutes a final judgment on the merits. *Id.* at 458. *See also* Illinois Supreme Court Rule 273. Li argues that the state court did not have competent jurisdiction because her case was transferred to the wrong venue, but "[q]uestions of venue . . . are not jurisdictional." *United States*

*v. Stabile*, 122 Fed. App'x 856, 857 (7th Cir. 2005). Li also argues that the judge in the state court action made a number of errors. However, "[t]he doctrine of res judicata is not dependent upon the correctness of the judgment." *People v. Kidd*, 398 Ill. 405, 410 (1947). Li states that the state court's ruling "should be reviewed by [a] federal court judge," [44] at 11, but I am not that judge—only the United States Supreme Court can review a state court judgment. *See Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000) ("[N]o matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.").

Second, the complaints allege the same causes of action. Illinois has adopted the "transactional test" to determine whether causes of action are identical, under which "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Parungao*, 858 F.3d at 457 (citation omitted). Both the state-court complaint and the complaint at issue here arise from the same core facts—Helmy's defective psychiatric evaluation of Li that resulted in the suspension of her medical license and the hospital's failure to properly train and supervise its physicians.

Third, the parties in this case and the prior state court action are identical for the purposes of res judicata. Only the hospital defendants assert the defense of res judicata, and Li named both the hospital and Helmy in the state court complaint.

12

[37-1] at 83. Li seems to concede this point, arguing that the claims against the other defendants have not been litigated in state court and "[a]ll of the defendants should not be barred because of res judicata." [44] at 12. She is correct, and res judicata bars only the claims against the Northwestern defendants. However, the claims against the other defendants are dismissed for other reasons, as described above.

Lastly, all the causes of action brought in the instant complaint against the Northwestern defendants could have been brought in the earlier state court action. *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("[S]tate courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."); *Rose v. Bd. of Election Comm'rs for City of Chicago*, 815 F.3d 372, 374 (7th Cir. 2016).

The hospital defendants also argue that Li fails to state a viable claim against them. Because I find that the claims against the hospital defendants are barred by the doctrine of res judicata, I need not reach the sufficiency of the allegations. But I will address one argument—Li has not sufficiently alleged that Helmy or the hospital is a state actor. Section 1983 claims only impose liability on individuals and entities acting under the color of state law. *See L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017). Private individuals and entities act under the color of the law when they are "willful participant[s] in joint action with the State or its agents," which requires "evidence of a *concerted effort*." *Id.* (citation omitted) (emphasis in original). Li's complaint does not contain any

13

allegations of such concerted effort. Li's complaint does allege that Helmy "acted under the color of the acts" (which was presumably meant to say "the color of the law"). [7] ¶ 65. *See also* [7] ¶¶ 13–14. But that is a legal conclusion, not a factual allegation, and it is insufficient to plausibly allege that Helmy and NMH acted under the color of law.

### D. Northwestern University

The university defendants—the Feinberg School of Medicine and the Department of Psychiatry and Behavioral Science—have not appeared in response to the complaint. Nevertheless, Li's claims against them are dismissed on the court's own motion. *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016) ("The Court dismisses a claim *sua sponte* under Federal Rule 12(b)(6) using the same standards applied as if it had been a motion to dismiss from the opposing party."). The medical school and psychiatry department—to the extent they are suable entities—would be in privity with the defendants in Li's state-court suit and claim preclusion bars Li's action against them. Li's request for an order of default against the university defendants is denied, and these defendants are dismissed instead.

### E. Proposed Second Amended Complaint

While the parties were briefing the motions to dismiss, Li moved for leave to file a second amended complaint, [39], and attached a proposed complaint. [39-1]. Li was entitled to one amendment as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), which she has already used. [7]. Further amendments are only permitted if I grant

her leave (because the opposing parties did not consent), and I "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But I have "broad discretion to deny leave to amend . . . where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Because the issues of sovereign immunity, the statutes of limitations, and res judicata cannot be avoided by repleading, the proposed amendment, which continues to name IDFPR, the Rockford defendants, and the Northwestern defendants, would be futile. *See* [39-1]. Although it alleges new causes of action (mostly what Li labels as "federal torts"), those causes of action do not escape the affirmative defenses that doomed the previous amended complaint at issue on these motions. Li argues that the new causes of action that she alleges in the proposed second amended complaint have never been litigated before. But those claims also arise from the same core facts as the current complaint in this case and the state court complaint, and res judicata (as to the Northwestern defendants) would apply to them too. On that basis, I deny Li's motion for leave to file the second amended complaint.

I consider whether Li could "shape the complaint into a viable legal document" limited to timely individual-capacity claims against Forester and Lozovskiy. *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). In her proposed second amended complaint, Li alleges that in 2015 and 2016 (within two years of her March 2017 complaint), Lozovskiy interfered with her access to the courts by inappropriately delaying her license-suspension trial. [39-1] at 22. Lozovskiy, the IDFPR prosecutor, would be absolutely immune from liability

for these prosecutorial actions. *See Mendenhall v. Goldsmith*, 59 F.3d 685, 690 (7th Cir. 1995) (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)); *see also Peer v. Cauble*, No. 08 C 5469, 2011 WL 814159, at *4 (N.D. Ill. Mar. 1, 2011) (applying *Mendenhall* and granting absolute immunity to IDFPR prosecutor for conduct in connection with suspension hearing). Forester is alleged to have negligently kept Li on probation, and perpetrated a fraud by presenting a claim for an unnecessary psychiatric evaluation. [39-1] at 24, 27. This conduct is also alleged to amount to an intentional infliction of emotional distress. [39-1] at 37. Although Li labels these claims "federal torts," they do not implicate federal law or the constitution and if not barred by Forester's absolute immunity as an IDFPR prosecutor, are, at most, state-law claims. There are no viable federal claims in Li's proposed second amended complaint, and I decline to exercise supplemental jurisdiction over any viable state-law claims. *See Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017).

This court, at this time, is just not an available forum for Li to pursue her allegations.

## IV. Conclusion

For the reasons explained above, defendants' motions to dismiss [22] [36] [37] [38] are granted. The amended complaint is dismissed. Li's motion for leave to file a second amended complaint [39] is denied. Li's motions to strike the motions to dismiss [40] [44] are denied.[9] All claims are dismissed with prejudice, with the

---

[9] Li's motion for leave to file an amended exhibit [51] is granted. The evidence Li submitted in several filings on the docket was immaterial to the assessment of the legal sufficiency of her complaint.

exception of any implicit, timely state-law claims against Forester and Lozovskiy, which are dismissed without prejudice under 28 U.S.C. § 1367(c). Enter judgment and terminate civil case.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: March 23, 2018